## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| **COREY HERTEL, SPENCER SMITH, BRIAN BORDEN, JONATHAN THERIOT, and MICHAEL BARNETT** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No.  1:20-cv-1748** |
| **ACTION TECHNOLOGIES GROUP, INC.** | ) ) ) ) | |
| *Serve:* | ) ) | |
| *c/o Leslie Pannell, Registered Agent* *3621 North Everbrook Lane, Suite 5* *Muncie, IN 47304* | ) ) ) ) | |
| **and** | ) ) | |
| **MATTHEW PANNELL** | ) ) | |
| *Serve:* | ) ) | |
| *7908 West Heathrow Lane* *Yorktown, IN 47396* | ) ) ) | |
| **and** | ) ) | |
| **LESLIE PANNELL** | ) ) | |
| *Serve:* | ) ) | |
| *7908 West Heathrow Lane* *Yorktown, IN 47396* | ) ) ) | |
| **and** | ) ) | |
| **CONNOR PANNELL** | ) ) | |
| *Serve:* | ) ) | |
| *3621 North Everbrook Lane, Suite 5* *Muncie, IN 47304* | ) ) ) ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

*Jury Trial Demanded*

The Plaintiffs, Corey Hertel, Spencer Smith, Brian Borden, Jonathan Theriot, and Michael Barnett (collectively, the "Plaintiffs"), for their Complaint against Defendants Action Technologies Group, Inc. ("ATG") and Matthew Pannell, Leslie Pannell, and Connor Pannell ("Individual Defendants"), state and allege as follows:

## INTRODUCTION

1.      Plaintiffs are all former workers of the Defendant ATG.

2.      At all times relevant hereto, Plaintiffs were misclassified as independent contractors under the FLSA, Internal Revenue Code, and other applicable state wage and hour laws. Rather, they were employees as defined by 29 U.S.C. § 203(e) and 26 U.S.C. § 3121(d)(2).

3.      As set forth in more detail in this Complaint, ATG has improperly, uniformly, and willfully applied a policy of fraudulently misclassifying workers as independent contractors rather than as employees.

4.      By misclassifying Plaintiffs and other employees as independent contractors, ATG has failed to pay legally required employment taxes to both the United States and the states of Indiana, Kentucky, Colorado, Missouri, and Tennessee and otherwise avoided financial and other obligations inherent in the employment relationship at all times relevant hereto.

5.      Furthermore, Individual Defendants Matthew and Leslie Pannell repeatedly used ATG's bank accounts as their own personal piggy bank, frequently rendering ATG unable to meet its payroll and benefits commitments to the Plaintiffs. As a result, by March 2020, the Plaintiffs were collectively owed at least $200,000 in commissions, salaries, and benefits. These amounts have been calculated based on company reports delivered to the Plaintiffs between August 2019

and March 2020.  ATG did not circulate sales reports prior to August 2019, and ATG's payment defaults will very likely turn out to be much higher.

6.       The Plaintiffs thus seek damages pursuant to the FLSA, the Internal Revenue Code, state wage and hour laws and contract law. Because the Individual Defendants abused the corporate form in a manner that was fraudulent and promoted the unjust treatment of the Plaintiffs and other employees of ATG, the Plaintiffs also seek equitable relief piercing the corporate veil and holding Leslie Pannell and Connor Pannell liable as the named equity owners of ATG and Matthew Pannell liable as an additional "whispering" or *de facto* owner of ATG.

7.       Finally, Plaintiff Hertel seeks a judgment pursuant to 28 U.S.C. § 2201, Federal Rule of Civil Procedure 57, and all other applicable law declaring that a purported Confidentiality, Non-Compete and Compensation Agreement between Corey Hertel and ATG, **Exhibit 1** hereto, either does not constitute a binding contractual obligation or, alternatively, that the Defendants' prior flagrant contractual and statutory breaches described above rendered any such non-compete obligations unenforceable as a matter of black letter Indiana law.

## **PARTIES**

8.       Plaintiff Corey Hertel is an individual resident of Kentucky residing at 5502 Sullivan Way, Louisville, Kentucky 40229.

9.       Plaintiff Spencer Smith is an individual resident of Colorado residing at 13593 Via Varra Unit 1423, Broomfield, CO 80020.

10.      Plaintiff Brian Borden is an individual resident of Missouri residing at 5215 Davis Crossing Road, Park Hills, MO 63601.

11.      Plaintiff Jonathan Theriot is an individual resident of Tennessee residing at 1117 Halverson Drive, Murfreesboro, TN 37128.

12.     Plaintiff Michael Barnett is an individual resident of Tennessee residing at 4205 Griffith Place, Smyrna, TN 37167.

13.     Defendant Action Technologies Group, Inc. is an Indiana corporation with its principal place of business located at 3621 North Everbrook Lane, Suite 5, Muncie, IN 47304. According to the records of the Indiana Secretary of State, ATG's registered agent for service of process is Leslie Pannell, 3621 N. Everbrook Lane, Suite 5, Muncie, IN 47304.

14.     Defendant Matthew Pannell is an individual resident of Indiana and may be served at the office of ATG, 3621 North Everbrook Lane, Suite 5, Muncie, IN 47304.

15.     Defendant Leslie Pannell is an individual resident of Indiana and may be served at the office of ATG, 3621 North Everbrook Lane, Suite 5, Muncie, IN 47304.

16.     Defendant Connor Pannell is an individual resident of Indiana and may be served at the office of ATG, 3621 North Everbrook Lane, Suite 5, Muncie, IN 47304

## JURISDICTION AND VENUE

17.     ATG is subject to the FLSA because it is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(r) and (s)(1). ATG is engaged in the interstate conduct of business and is an enterprise whose annual gross volume of sales exceeded $500,000 in all years relevant to this dispute.

18.     This Court has original jurisdiction to hear this Complaint and adjudicate the stated claims under 28 U.S.C. §§ 1331, 1340, and 2201. This action is being brought under the FLSA, Internal Revenue Code, and the common laws of the states of Indiana, Kentucky, Colorado, Missouri, and Tennessee, as applicable.[1]

---

[1] ATG also used its misclassification of employees as independent contractors to circumvent the Indiana Wage Claims Act requirement that "[w]henever any employer separates any employee from the pay-roll, the unpaid wages or compensation of such employee shall become due and

19.     This Court also has jurisdiction to hear this Complaint and adjudicate the claims of Corey Hertel, Brian Borden, and Jonathan Theriot under 28 U.S.C. § 1332 because this is a suit between citizens of different states, and the amount in controversy with respect to each claim exceeds $75,000.

20.     This Court also has supplemental jurisdiction over all state law claims in this Complaint pursuant to 28 U.S.C. § 1367. Those state claims derive from the same core of operative facts as the federal claims.

21.     This Court has personal jurisdiction over the Defendants because, among other things, each is a resident of Indiana.

22.     Venue is proper in the United States District Court for the Northern District of Indiana pursuant to 28 U.S.C. § 1391(a)(2), 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(c)(3) because the Northern District of Indiana is a judicial district in which all of the defendants reside.

<u>**COUNTS I THROUGH V:**</u>
<u>**CAUSES OF ACTION BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS**</u>

*A.   Allegations Common to All Counts*

23.     ATG was formed as an Indiana corporation in March 2018.

24.     At the time of ATG's formation, Defendant Matthew Pannell was employed by Source Inc., a competitor of ATG.

25.     As evidenced by ATG's form Confidentiality, Non-Compete and Compensation Agreement, which was transparently adapted from a form drafted by Source Inc., Matthew Pannell was party to confidentiality, non-compete, and non-solicitation obligations with Source Inc. at the

---

payable at regular pay day for pay period in which separation occurred." The Plaintiffs intend to seek amendment of this Complaint to state claims under Indiana's Wage Claims, Indiana Code §§ 22-2-9-1 *et seq.*, after satisfying Indiana's administrative pre-requisites to filing such claims.

time of ATG's formation *See* **Exhibit 1**, p. 2 ("WHEREAS, Source Inc. wishes to control the disclosure and use of certain proprietary information as related to the business of Source Inc. …").

26.     Apparently to disguise Mr. Pannell's violation of his non-compete and non-solicitation obligations, ATG was formed as a company owned by Mr. Pannell's wife, the Defendant Leslie Pannell. In documents filed with the Office of the Indiana Secretary of State between March 2018 and September 24, 2018, ATG identified its officers as Leslie Pannell, CEO, and Connor Pannell, Vice President.

27.     In private correspondence, however, Mr. Pannell disclosed the truth – that he was the President and primary decision-maker at ATG. *See* **Exhibit 1**, p. 1.

28.     Thus, from the very beginning, ATG was formed in a manner that disregarded ordinary corporate formalities and that was expressly intended to deceive outside observers as to the true situation at ATG.

29.     ATG's unusual and unlawful corporate structure was also used as a mechanism for Matthew and Leslie Pannell to siphon monies from ATG's bank accounts, frequently leaving ATG unable to meet its payroll obligations, and working a great and ongoing injustice on the Plaintiffs and the other employees of ATG that depended on regular payments from ATG, their sole source of income.

30.     Between March 2018 and June 2019, ATG hired each of the Plaintiffs.

31.     ATG held each one of the Plaintiffs out to state and federal authorities as independent contractors.

32.     As set forth in more detail below, the Plaintiffs were not independent contractors. They were employees.

33.     During the two-year period between March 2018 and March 2020, ATG repeatedly failed to make payroll on a timely basis.

34.     ATG's payroll issues were not due to a lack of revenue or due to excessive corporate expenses.

35.     ATG's payroll issues were instead caused by Matthew Pannell's and Leslie Pannell's excessive use of ATG's bank accounts and other resources as their own personal piggy bank.

36.     The Pannells' misuse of ATG funds was so well-known around ATG that, in November 2019, Joel Guzman, ATG's then-President, sent a "joking" text message to Plaintiff Jonathan Theriot stating, "I can fix the cash flow issue by taking the card away from [M]att [P]annell…lol."

37.     In the Fall of 2019, Plaintiffs Corey Hertel and Brian Borden, together with Joel Guzman and Individual Defendant Connor Pannell (Matthew Pannell's brother and a co-owner of ATG), met with Matthew Pannell and warned him that these ongoing payment breaches would eventually result in a mass departure of workers from ATG.

38.     Despite this warning, Matthew Pannell and Leslie Pannell persisted in their unlawful behavior to the detriment of ATG's employees and in flagrant breach of ATG's contractual and statutory obligations to pay its employees.

39.     As set forth in more detail below, by March 2020, ATG owed more than $200,000.00 in unpaid salaries, bonuses, and commissions to the Plaintiffs alone.

*B.  Allegations Applicable to Corey Hertel*

40.     Corey Hertel worked for ATG on a continuous basis from August 1, 2018 until March 12, 2020.

41.     Between August 2018 and December 2018, Mr. Hertel's job title was Sales Executive.

42.     Effective January 1, 2019, Mr. Hertel was promoted to a management position and given the title Director of Sales.

43.     In connection with each one of Mr. Hertel's positions at ATG, ATG both had and exercised the right to control Mr. Hertel's physical conduct. By way of example, and not limitation, Mr. Hertel was (a) required by Mr. Pannell to travel out-of-state to meet with prospective clients an average of 8 – 12 times a month; (b) required to participate in regular weekly and monthly meetings scheduled by Matthew Pannell, the President of ATG; (c) supervised subordinates who were also paid by ATG, as opposed to being sub-contractors; (d) had no power to ensure that these subordinates were paid on the frequent occasions when ATG failed to make payroll; and (e) could have been terminated by ATG at will in the event he failed to perform any of the demands made to him by Matthew Pannell.

44.     Mr. Hertel was economically dependent on ATG during all times that he worked for ATG. He routinely worked hours exceeding 40 hours every workweek while employed by ATG; he received no compensation from an employer or principal other than ATG; and his salary and benefits structure, although not timely paid, was consistent with the salary and benefits structure an employer would offer and pay to an employee in an attempt to take advantage of the outside sales exemption set forth in Section 7(i) of the FLSA.

45.     Mr. Hertel's work was not seasonal or project-based. It was a full-time job with a single employer.

46.     Mr. Hertel's work supervising and managing ATG's sales team was an integral part of ATG's business.

- 8 -

47.     Thus, the "economic realities" of Mr. Hertel's relationship with ATG overwhelmingly establish that he was an employee, notwithstanding the fact that ATG characterized him as an independent contractor.

48.     Beginning June 1, 2019 and at all times relevant to this wage and hour dispute, Mr. Hertel's pay structure was as follows:

- Mr. Hertel received a $12 commission for every desk phone sold by ATG;
- Mr. Hertel received no commission for tablets sold by ATG;
- Mr. Hertel received a $3 commission for every other device sold by ATG other than desk phones and tablets.

49.     Between November 2019 and March 12, 2020, Mr. Hertel earned at least $166,725.50 in commissions based on documents provided to him by ATG, but he was only paid $78,814.00.

50.     Mr. Hertel also earned bonuses pursuant to his agreement with ATG equal to 12.5% of ATG's quarterly bonus pool. ATG failed to pay these amounts as well, and Mr. Hertel is entitled to recover bonus payments in an amount to be determined through discovery in the course of litigation.

51.     While he worked for ATG, Mr. Hertel submitted requests for $10,000.00 in reimbursable expenses to ATG related to travel required by ATG. Although it was ATG's policy to reimburse such expenses, it failed to do so.

52.     ATG also agreed to provide Mr. Hertel with a policy of health insurance but allowed it to lapse. As a result, Mr. Hertel incurred $11,185.27 in health insurance bills that he would not have incurred but for ATG's violation of this agreement.

53.     Mr. Hertel is also owed $12,500.00 for computers he purchased on behalf of ATG that ATG still possesses, an auto allowance, an office space allowance, and a cell phone allowance that ATG agreed but failed to pay.

54.     Thus, based on the information presently available to him, Mr. Hertel is owed at least $119,059.50 in unpaid commissions and agreed-upon benefits by ATG.

55.     Mr. Hertel was also required to pay at least $9,801 in payroll taxes that should have been paid by ATG.

### C.  Allegations Applicable to Spencer Smith

56.     Spencer Smith worked for ATG on a continuous basis from November 2018 until March 2020.

57.     Between November 2018 and January 2019, Mr. Smith's job title was Project Manager.

58.     In January 2019, Mr. Smith was promoted to the National Account Executive position. In that capacity, his commission structure was $40 per desk phone sold by him personally and $20 per every other device sold by him personally.

59.     In September 2019, Mr. Smith was promoted to the position Director of Sales Operations. In that capacity, his commission structure was $10 per desk phone sold by ATG and $2 per every other device sold by ATG.

60.     In addition to his commissions, ATG agreed to pay Mr. Smith a quarterly bonus from a pool equal to 7.5% of ATG's quarterly profits during the fourth quarter of 2019 and the first quarter of 2020.

61.     In connection with each one of Mr. Smith's positions at ATG, ATG both had and exercised the right to control Mr. Smith's performance of his job obligations. By way of example and not limitation, Mr. Smith was required to travel and meet with customers at the direction of individuals above him in ATG's organizational hierarchy, including Matthew Pannell. Mr. Smith was also required to participate in weekly ATG company meetings and to travel from Colorado to

Muncie, Indiana from time to time. If Mr. Smith refused to comply with any of these directions, he was subject to termination.

62.     Mr. Smith was economically dependent on ATG during all times that he worked for ATG. He routinely worked hours exceeding 40 hours every workweek while employed by ATG; he had no employer or principal other than ATG; and his salary and benefits structure, although not timely paid, was consistent with the salary and benefits structure an employer would offer and pay to an employee in an attempt to take advantage of the outside sales exemption set forth in Section 7(i) of the FLSA.

63.     Mr. Smith's work was not seasonal or project-based. It was a full-time job with a single employer.

64.     While employed by ATG, Mr. Smith did not work for any company other than ATG.

65.     Mr. Smith's work was an integral part of ATG's business.

66.     Thus, the "economic realities" of Mr. Smith's relationship with ATG overwhelmingly establish that he was an employee of ATG, notwithstanding the fact that ATG characterized him as an independent contractor.

67.     Based on the information presently available to him, Mr. Smith is owed at least $30,661 in unpaid commissions and bonuses by ATG.

68.     Mr. Smith was also required to pay at least $6,990 in payroll taxes that should have been paid by ATG.

### D.  Allegations Applicable to Brian Borden

69.     Brian Borden worked for ATG on a continuous basis from April 2019 until March 2020.

70.     Between April 2019 and December 2019, Mr. Borden's job title was National Account Executive. In October 2019, Mr. Borden was also given the job title Senior Manager of Business Sales.

71.     In December 2019, Mr. Borden's job title was changed to Sales Director of Central Market.

72.     Although Mr. Borden's job title changed, his commission structure through January 2020 was consistently $40 per desk phone sold by him and $20 per every other device sold by him.

73.     In or around February 2020, Mr. Borden's rate of pay was changed to a $10,000.00 monthly salary.

74.     In connection with each and every one of Mr. Borden's positions at ATG, ATG both had and exercised the right to control Mr. Borden's performance of his job obligations. By way of example and not limitation, Mr. Borden was required to travel and meet with customers at the direction of individuals above him in ATG's organizational hierarchy, including Matthew Pannell. Mr. Borden was also required to participate in weekly ATG company meetings. If Mr. Borden refused to comply with any of these directions, he was subject to termination.

75.     Mr. Borden was economically dependent on ATG during all times that he worked for ATG. He routinely worked hours exceeding 40 hours every workweek while employed by ATG; he had no employer or principal other than ATG; and his salary and benefits structure, although not timely paid, was (a) consistent with the salary and benefits structure an employer would offer and pay to an employee in an attempt to take advantage of the outside sales exemption set forth in Section 7(i) of the FLSA between April 2019 and February 2020; and (b) consistent with the salary and benefits structure an employer would offer and pay to an exempt salaried employee from February 2020 onward.

76.     Mr. Borden's work was not seasonal or project-based. It was a full-time job with a single employer.

77.     While employed by ATG, Mr. Borden did not work for any company other than ATG.

78.     Mr. Borden's work was an integral part of ATG's business.

79.     Thus, the "economic realities" of Mr. Borden's relationship with ATG overwhelmingly establish that he was an employee of ATG, notwithstanding the fact that ATG characterized him as an independent contractor.

80.     Based on the information presently available to him, Mr. Borden is owed at least $38,739 in unpaid commissions and salary by ATG.

81.     Mr. Borden was also required to pay at least $9,473 in payroll taxes that should have been paid by ATG.

*E.   Allegations Applicable to Jonathan Theriot*

82.     Jonathan Theriot worked for ATG on a continuous basis from April 2019 until March 2020.

83.     Between February 2019 and July 2019, Mr. Theriot's job title was National Account Executive.

84.     In July 2019, Mr. Theriot was promoted to a Director of Sales position. In that position, Mr. Theriot's commission structure was $10 per desk phone sold by ATG, no commission per tablet device sold by ATG, and $2 per every other device sold by ATG. ATG also agreed to pay Mr. Theriot a bonus from a pool equal to 7.5% of ATG's quarterly profits.

85.     In December 2019, Mr. Theriot was promoted to the Vice President of Sales position. In that position, Mr. Theriot's commission structure was $12 per desk phone sold by

ATG and $3 per every other device sold by ATG. ATG's agreement to pay Mr. Theriot a quarterly bonus from a pool equal to 7.5% of ATG's quarterly profits did not change.

86.    In connection with each one of Mr. Theriot's positions at ATG, ATG both had and exercised the right to control Mr. Theriot's performance of his job obligations. By way of example and not limitation, Mr. Theriot was required to travel and meet with customers at the direction of individuals above him in ATG's organizational hierarchy, including Matthew Pannell. Mr. Theriot was also required to participate in weekly ATG company meetings. In the event that Mr. Theriot refused to comply with any of these directions, he was subject to termination.

87.    Mr. Theriot was economically dependent on ATG during all times that he worked for ATG. He routinely worked hours exceeding 40 hours every workweek while employed by ATG; he had no employer or principal other than ATG; and his salary and benefits structure, although not timely paid, was consistent with the salary and benefits structure an employer would offer and pay to an employee in an attempt to take advantage of the outside sales exemption set forth in Section 7(i) of the FLSA.

88.    Mr. Theriot's work was not seasonal or project-based. It was a full-time job with a single employer.

89.    While employed by ATG, Mr. Theriot did not work for any company other than ATG.

90.    Mr. Theriot's work was an integral part of ATG's business.

91.    Thus, the "economic realities" of Mr. Theriot's relationship with ATG overwhelmingly establish that he was an employee of ATG, notwithstanding the fact that ATG characterized him as an independent contractor.

92.     Based on the information presently available to him, Mr. Theriot is owed at least $36,905 in unpaid commissions and salary by ATG.

93.     Mr. Theriot was also required to pay at least $6,951 in payroll taxes that should have been paid by ATG.

### F.   Allegations Applicable to Michael Barnett

94.     Michael Barnett worked for ATG on a continuous basis from June 2019 until March 2020.

95.     Michael Barnett's job title was initially Solutions Architect. As Solutions Architect, Mr. Barnett was paid a $4,000 monthly salary and had $800 in taxes withheld each month for the ostensible purpose of paying payroll taxes.

96.     Mr. Barnett was promoted to Director of Technology in September 2019. As Director of Technology, Mr. Barnett was paid a $5,000 monthly salary and, until November 2019, had $1,000 in taxes withheld each month for the ostensible purpose of paying payroll taxes.

97.     In December 2019, ATG advised Mr. Barnett that he was an independent contractor, not an employee, and stopped withholding payroll taxes.

98.     Mr. Barnett was not the only ATG worker who initially had payroll taxes withheld, only to be re-characterized as an independent contractor at the end of 2019. At least one other worker, Jeremy Pigg, encountered the same issue.

99.     ATG re-classified these employees as independent contractors because Matthew Pannell's and Leslie Pannell's personal expenditures deprived ATG of the money required to meet payroll taxes.

100.     Thus, Matthew and Leslie Pannell appropriated money that had been withheld from employees' paychecks for their own personal use and benefit.

101.    At all times relevant hereto, Mr. Barnett was paid on a salary basis. As Director of Technology, ATG also agreed to pay Mr. Barnett a year-end profit share and a quarterly bonus.

102.    In connection with each one of Mr. Barnett's positions at ATG, ATG both had and exercised the right to control Mr. Barnett's performance of his job obligations. By way of example and not limitation, Mr. Barnett was required to travel and meet with customers at the direction of individuals above him in ATG's organizational hierarchy, including Matthew Pannell. Mr. Barnett was also required to participate in weekly ATG company meetings. In the event that Mr. Barnett refused to comply with any of these directions, he was subject to termination.

103.    Mr. Barnett was economically dependent on ATG during all times that he worked for ATG. He routinely worked hours exceeding 40 hours every workweek while employed by ATG; he had no employer or principal other than ATG; and his salary and benefits structure, although not timely paid, was consistent with the salary and benefits structure of an employee paid on a salary basis.

104.    Mr. Barnett's work was not seasonal or project-based. It was a full-time job with a single employer.

105.    While employed by ATG, Mr. Barnett did not work for any company other than ATG.

106.    Mr. Barnett's work was an integral part of ATG's business.

107.    Thus, the "economic realities" of Mr. Barnett's relationship with ATG overwhelmingly establish that he was an employee of ATG, notwithstanding the fact that ATG characterized him as an independent contractor.

108.    Based on the information presently available to him, Mr. Barnett is owed at least $24,480 in unpaid commissions and salary by ATG.

109.    Mr. Barnett was also required to pay at least $4,089 in payroll taxes that should have been paid by ATG.

## COUNT I: CLAIM FOR DECLARATORY
## RELIEF FOR MISCLASSIFYING EMPLOYEES AS INDEPENDENT CONTRACTORS

110.    Plaintiffs repeat and incorporate by reference the preceding allegations of the Complaint as if set forth at length herein.

111.    Plaintiffs' work activities for ATG are and have been as employees under the FLSA. For all time worked by all Plaintiffs, Plaintiffs are entitled to declaratory relief for being misclassified as independent contractors.

112.    ATG's uniform policy of wrongfully classifying employees as independent contractors is and has been a willful violation of §§ 203(e) and (g) of the FLSA, as evidenced by, among other things, ATG's shifting characterization of the job classifications of Mr. Barnett and Jeremy Pigg.

113.    An actual and justiciable dispute exists between ATG and Plaintiffs as to the validity of ATG's classification of Plaintiffs as independent contractors.

114.    Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a judgment declaring that they were employees of ATG, not independent contractors.

## COUNT II: FLSA DAMAGES CLAIMS FOR MINIMUM WAGE
## AND OVERTIME VIOLATIONS

115.    Plaintiffs repeat and incorporate by reference the preceding allegations of the Complaint as if set forth at length herein.

116.    By September 2019, none of the Plaintiffs had sales as their primary job function.

117.    Thus, none of the Plaintiffs qualified as exempt Outside Sales Employees under the FLSA during the time periods applicable to this case.

118.    Pursuant to 29 C.F.R. § 541.602(a)(1), to qualify as an exempt salaried employee, that employee "must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked."

119.    As a result of ATG's actions described above, ATG failed to pay the Plaintiffs occupying management and executive positions a regular full salary equal to at least $455 per week for every workweek during which they were employed.

120.    Therefore, ATG failed to pay the Plaintiffs on either a salary basis or commission basis and is not entitled to treat Plaintiffs as exempt employees.

121.    During the weeks that it failed to pay salaries and/or commission payments, ATG violated 29 U.S.C. § 206, requiring it to pay a minimum wage during each workweek.

122.    During all weeks that a Plaintiff worked more than 40 hours per week, ATG violated 29 U.S.C. § 207, requiring it to pay overtime to non-exempt employees.

123.    Pursuant to 29 U.S.C. § 216, Plaintiffs are entitled to recover damages, liquidated damages, and their reasonable attorney's fees incurred in this action.

### COUNT III: CLAIM FOR FEDERAL DAMAGES
### DUE TO MISCLASSIFICATION UNDER 26 U.S.C. § 7434

124.    Plaintiffs repeat and incorporate by reference the preceding allegations of the Complaint as if set forth at length herein.

125.    By misclassifying Plaintiffs as independent contractors, ATG willfully filed fraudulent 1099 information returns under 26 U.S.C. § 7434, with respect to payments purported to be made to Plaintiffs.

126.    ATG's fraudulent information returns regarding Plaintiffs were willful as evidenced by ATG's initial withholding of payroll taxes from wages due to certain employees and later reversal of this determination.

127. As such, Plaintiffs seek $5,000 per each Plaintiff for each year ATG filed such fraudulent 1099 information returns or, if greater, their actual damages, including, *inter alia*, loss of benefits, loss of tax contributions, unemployment payments, and cost of providing their own liability insurance; costs of this action; and attorney's fees.

## COUNT IV: BREACH OF CONTRACT

128. Plaintiffs repeat and incorporate by reference the preceding allegations of the Complaint as if set forth at length herein.

129. ATG contractually agreed to pay each of the Named Paragraphs in consideration of the labor they performed for ATG.

130. By virtue of its actions described herein, ATG defaulted on and breached its contractual obligation to pay each of the Plaintiffs.

131. Each of the Plaintiffs has been damaged by ATG's violation of its contractual obligations and is entitled to recover compensatory damages.

## COUNT V: ACTION TO PIERCE THE CORPORATE VEIL

132. Plaintiffs repeat and incorporate by reference the preceding allegations of the Complaint as if set forth at length herein.

133. By virtue of their actions described above, the Individual Defendants ignored, controlled, and/or manipulated ATG's corporate form in a manner that (a) rendered it the instrumentality of the Defendants; (b) constituted a fraud as to the public; and (c) specifically promoted injustice as to the employees of ATG.

134. ATG was consistently under-capitalized because of the Individual Defendants' actions, as evidenced by its inability to make payroll.

135.     ATG's ownership disclosures and records were similarly fraudulent. By way of example but not limitation, Leslie and Connor Pannell held themselves out publicly as the owners of ATG, but they gave Matthew Pannell full discretion and control of ATG's bank accounts.

136.     Had Connor and Leslie Pannell observed corporate formalities and prevented Matthew Pannell from treating the company as his own piggy bank, ATG would have been properly capitalized and able to pay the Plaintiffs and its other workers.

137.     The payments ATG made on behalf of Leslie and Matthew Pannell included their individual debt obligations, including a mortgage on a second home in Florida.

138.     The Individual Defendants' misuse of ATG's corporate form promoted injustice as to ATG's workers.

139.     Specifically, by allowing Matthew Pannell *carte blanche* access to ATG's bank accounts, Connor and Leslie Pannell deprived the Plaintiffs and other ATG workers of hundreds of thousands of dollars in wages.

140.     Thus, the Plaintiffs seek equitable relief from this Court in the form of an order disregarding ATG's corporate form and holding its individual owners Leslie Pannell and Connor Pannell, as well as its "whispering" or *de facto* owner, Matthew Pannell, personally liable for ATG's payroll liabilities.

**WHEREFORE, on Counts I through V of their Complaint, the Plaintiffs seek the following relief:**

**1.     A judgment declaring that they were misclassified as independent contractors instead of employees;**

**2.     A judgment disregarding the corporate form of Action Technologies Group, Inc. and holding its actual and de facto owners individually responsible for any award of damages to the Plaintiffs;**

**3.     A judgment for compensatory and statutory double damages in favor of Corey Hertel, jointly and severally against all Defendants, in the amount of $200,314.27, plus an**

*additional amount for unpaid overtime resulting from ATG's failure to pay Mr. Hertel on a salary basis;*

*4.      A judgment for compensatory and statutory double damages in favor of Spencer Smith, jointly and severally against all Defendants, in the amount of $68,312.00, plus Mr. Smith's unreimbursed expenses and an additional amount for unpaid overtime resulting from ATG's failure to pay Mr. Smith on a salary basis;*

*5.      A judgment for compensatory and statutory double damages in favor of Brian Borden, jointly and severally against all Defendants, in the amount of $86,951.00, plus Mr. Borden's unreimbursed expenses and an additional amount for unpaid overtime resulting from ATG's failure to pay Mr. Borden on a salary basis;*

*6.      A judgment for compensatory and statutory double damages in favor of Jonathan Theriot, jointly and severally against all Defendants, in the amount of $80,761.00, plus Mr. Theriot's unreimbursed expenses and an additional amount for unpaid overtime resulting from ATG's failure to pay Mr. Theriot on a salary basis;*

*7.      A judgment for compensatory and statutory double damages in favor of Michael Barnett, jointly and severally against all Defendants, in the amount of $53,049.00, plus Mr. Barnett's unreimbursed expenses and an additional amount for unpaid overtime resulting from ATG's failure to pay Mr. Barnett on a salary basis;*

*8.      Pursuant to 29 U.S.C. § 216(b), a reasonable attorney's fee;*

*9.      Amendment of the Complaint to bring private causes of action under Indiana's Wage Claims Act, IC §§ 22-2-9-1 et seq., upon satisfaction of the applicable administrative conditions precedent;*

*10.     Trial by jury on all issues so triable; and*

*11.     Any and all other relief, legal or equitable, to which they may appear entitled.*

### COUNT VI: ACTION FOR DECLARATORY RELIEF BY COREY HERTEL AGAINST ATG

141.    Plaintiffs repeat and incorporate by reference the preceding allegations of the Complaint as if set forth at length herein.

142.    On May 8, 2020, counsel for ATG delivered Corey Hertel notice that it intended to enforce non-compete and non-solicitation obligations contained in the instrument attached hereto as **Exhibit 1** (the "Alleged Non-Compete Agreement").

143.    The Alleged Non-Compete Agreement is not a completely integrated agreement, lacks mutuality, and was otherwise unenforceable at the time of its purported execution.

144.    To the extent the Alleged Non-Compete Agreement otherwise would have been an enforceable instrument at the time of its execution, it was delivered by Matthew Pannell to Corey Hertel in violation of Mr. Pannell's own non-compete and non-solicitation obligations to Source, Inc. Thus, the Alleged Non-Compete Agreement was also an unlawful agreement and void as a matter of public policy.

145.    As evidence that ATG recognized that the Alleged Non-Compete Agreement was not an enforceable instrument, Connor Pannell, ATG's Vice President and an authorized agent of ATG, advised Corey Hertel in December 2018 that Mr. Hertel was not subject to any non-compete obligations.

146.    Even if the Alleged Non-Compete Agreement were originally an enforceable instrument, ATG's subsequent prior and significant breaches of its payment obligations to Mr. Hertel relieved Mr. Hertel of any obligations under the Alleged Non-Compete Agreement. *See, e.g., Licocci v. Cardinal Associates, Inc.*, 492 N.E.2d 48 (Ind.App. 1986).

147.    An actual and justiciable dispute exists between ATG and Corey Hertel as to the validity and enforceability of the Alleged Non-Compete Agreement.

148.    Pursuant to 28 U.S.C. § 2201, Corey Hertel is entitled to a judgment declaring that the Alleged Non-Compete Agreement is not a valid and enforceable agreement.

**WHEREFORE, on Counts VI of the Complaint, Corey Hertel seeks the following relief:**

**1.    A judgment declaring that the Alleged Non-Compete Agreement is invalid and/or unenforceable;**

**2.    Trial by jury on all issues so triable; and**

**3.    Any and all other relief, legal or equitable, to which he may appear entitled.**

Respectfully submitted,

*/s/ Christopher B. Rambicure*
CHRISTOPHER B. RAMBICURE
214 South 8th Street
Suite 200
Louisville, KY 40202
Telephone: (502) 587-9560
E-mail: chris@rambicurelaw.com
**Counsel for the Plaintiffs**